## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Aaron Rhy Broussard, | Case No. 22-CV-0342 (SRN/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Thomas M. Hollenhorst et al., | |
| Defendants. | |

Aaron Rhy Broussard, Sherburne County Jail, 13880 Business Center Drive NW, Elk River, MN 55330-1692, *pro se*.

SUSAN RICHARD NELSON, United States District Judge

This matter comes before the Court on Plaintiff Aaron Rhy Broussard's (1) Complaint for Violation of Civil Rights [Doc. Nos. 1, 4 ("Original Complaint")],[1] (2) Application to Proceed in District Court Without Prepaying Fees or Costs [Doc. No. 2 ("IFP Application")], (3) Motion for Temporary Restraining Order [Doc. No. 3 ("TRO Motion")], and (4) Amended Complaint [Doc. No. 4]. For the following reasons, the Court deems the Amended Complaint to be this action's presently operative pleading, dismisses the Amended Complaint in part, stays the remainder pending resolution of Broussard's pending federal criminal prosecution, grants the IFP Application, and denies the TRO Motion.

---

[1] The Court received the Original Complaint in two parts; for present purposes, the Court treats the two filings as one consolidated complaint.

## I.    BACKGROUND

Broussard is presently the defendant in a criminal prosecution in this District.  [*See, e.g.*, Docket, *United States v. Broussard*, No. 19-CR-0101 (SRN/ECW) (D. Minn.).]  That case's record is lengthy; the Court need not provide a fulsome summary here.  For relevant context, however, the Court notes the following.  Broussard presently faces trial on a seventeen-count Second Revised Indictment, the gravamen of which is that he stands accused of illegally distributing various controlled substances and controlled substance analogues, leading to serious injuries and several deaths.  [*See* Second Revised Indictment 1–14, *United States v. Broussard*, No. 19-CR-0101 (SRN/ECW) (D. Minn. Mar. 10, 2022).]  Trial is set for March 14, 2022—this coming Monday—notwithstanding Broussard's several recent attempts to push back that date.  [*See* Second Am. Trial Notice and Final Pretrial Order 1, *United States v. Broussard*, No. 19-CR-0101 (SRN/ECW) (D. Minn. Dec. 17, 2021) (setting trial date).][2]

Broussard filed the Original Complaint, IFP Application, and TRO Motion on February 3, 2022.  [*See* Doc. No. 1 at 1; IFP Appl. 1.; TRO Mot. 1.]  The IFP Application asks this Court to let Broussard proceed *in forma pauperis* ("IFP") in this action; the TRO Motion asks the Court to halt his criminal case and order his immediate release from detention.

---

[2] [*See also, e.g.*, Order, *United States v. Broussard*, No. 19-CR-0101 (SRN/ECW) (D. Minn. Mar. 1, 2022) (denying Broussard's motion to stay trial); Order, *United States v. Broussard*, No. 19-CR-0101 (SRN/ECW) (D. Minn. Feb. 8, 2022) (denying Broussard's motion to continue trial); *Broussard v. United States*, No. 21-CV-2484 (SRN/LIB), 2021 WL 5868719, at *1 (D. Minn. Nov. 18, 2021) (denying Broussard's habeas petition challenging pending prosecution).]

[*See* IFP Appl. 1; TRO Mot. 1–2.]   On February 23, 2022, Magistrate Judge Elizabeth Cowan Wright ordered Broussard to pay an initial partial filing fee.   [*See* Doc. No. 8 at 4.] That order specifically warned Broussard that (among other issues) the Original Complaint likely "feature[d] impermissible joinder" and that "to the extent [his] present action could interfere with his pending federal criminal prosecution . . . this action is likely a nonstarter" because "[f]ederal courts generally will not interfere with ongoing federal criminal prosecutions."   [*Id.* at 3 n.2 (citing authorities).]

On March 7, shortly after Broussard paid his initial partial filing fee, the Court received the Amended Complaint.   Fifty-four pages long, it specifically names twenty-three defendants [*see* Am. Compl. 4–7],[3] as well as several groups of as-yet-unnamed defendants [*see id.*].[4]   It purports to present forty-nine causes of action, though Broussard makes essentially no effort to specify which Defendants each count targets.   [*See id.* at 30–51.]

For relief, Broussard asks for hundreds of millions of dollars of monetary damages (including punitive damages), as well as "costs, disbursements, . . . attorney's fees and

---

[3] Captions in federal complaints often provide a list of defendants; the Amended Complaint does not.   By the Court's check of the Amended Complaint's "Parties" section, Broussard means to sue the following named individuals: Thomas M. Hollenhorst; Melinda A. Williams; Charles J. Novats, Jr. [sic]; W. Anders Folk; Erica McDonald; Michelle Olshefski; David J. Freed; Bruce Brandler; Terrence Olstad; Marc R. Lombardi, Louis J. Ryckely; Dick L. Mah; William Davis; Jason Gula; Alexis Guidice; Chris Watkins; Blair Babcock; Scott Syne; Jon Schafer; Thomas McDonald; Sarah Wicker; Mark Rossi; and Bernard J. Brown.

[4] By the Court's check, the groups here are as-yet-unknown employees for a dozen U.S. Attorney's Offices; various "District Attorney's Offices" for Minnesota counties; the Drug Enforcement Agency; "local, city and state law enforcement" in thirteen listed states; and the U.S. Postal Service.   [*See* Am. Compl. 4–7.]

other expenses." [*Id.* at 53–54.]  He also asks for four forms of "declaratory relief"—

specifically, for the Court to declare that:

1.  the government's intent to introduce elements that aren't present within a count/indictment via trial jury instruction would undoubtedly result in fatal variances, consequently violating multiple constitutional rights of the plaintiff;

2.  a grand jury's determination of the Analogue Act's elements are mandated by the Federal Constitution and Federal Rules of Criminal Procedure;

3.  the government's reservation of the right to present, and presentation of a theory of purposeful acts associate[d] with fentanyl is in complete bad faith and illegal; and

4.  lack of probable cause is not an element of a Vindictive Prosecution claim, and such proposal conflicts with Supreme Court precedent.

[*Id.* (citations omitted).]

Broussard also asks that the "relevant alleged conduct" be "[e]xpung[ed]" from his

"criminal/arrest record," and that the Court "[i]ssue preliminary and permanent injunctions

staying the pending criminal prosecution within the District of Minnesota."  [*Id.* at 54.]

## II.   DISCUSSION

### A.   Operative Pleading

As a threshold matter, the Court addresses Broussard's attempt to amend the Original

Complaint.  Under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, as relevant

here, "[a] party may amend its pleading once as a matter of course within . . . 21 days after

service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e),

or (f), whichever is earlier."  At present, the Original Complaint has yet to be served on

any Defendants, so Broussard plainly meets the Rule 15(a)(1)(B) deadline.  The Court will thus treat the Amended Complaint as this action's operative pleading.

### B.    Pleading Standards

Rather than pay this action's filing fee, Broussard submitted the IFP Application. The IFP Application suggests that Broussard qualifies financially for IFP status.  But under the federal statute governing IFP proceedings, "notwithstanding any filing fee, or any portion thereof, that may have been paid," a court overseeing an IFP action "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2)(B)(ii).   Furthermore, 28 U.S.C. § 1915A imposes certain screening requirements on any civil action where "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."[5] Within that screening, a court shall dismiss part of or all of a complaint where it, among other things, "fails to state a claim upon which relief may be granted."  *Id.* § 1915(b)(1).

To determine if the Amended Complaint states a claim on which a court can grant relief, this Court must accept the Amended Complaint's factual allegations as true and must draw all reasonable inferences in Broussard's favor.  *See, e.g.*, *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008) (quoting *Reis v. Walker*, 491 F.3d 868, 870 (8th Cir. 2007)).  A complaint's factual allegations need not be detailed, but must be sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities).  The complaint must "state a claim to relief that is

---

[5] *Cf.* 28 U.S.C. § 1915A(c) (including detainees within relevant definition of "prisoner").

plausible on its face." *Id.* at 570.  In assessing a complaint's sufficiency, a court may disregard legal conclusions couched as factual allegations.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  Courts are to construe *pro se* complaints liberally, but such pleadings still must allege sufficient facts to support the claims advanced.  *See, e.g.*, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

Furthermore, under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Establishing jurisdiction is a threshold issue for any matter in federal court; courts may therefore address jurisdiction *sua sponte*.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing authorities); *Robins v. Ritchie*, 631 F.3d 919, 924 (8th Cir. 2011) (citing cases).  Such *sua sponte* consideration may include assessments of whether the court should apply various abstention doctrines.  *See, e.g.*, *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) (citing cases); *Robinson v. City of Omaha*, 866 F.2d 1042, 1043 (8th Cir. 1989) (quoting *Bellotti*).

### C.    Potential Conditions-of-Confinement Claims

As noted above, several pages of the Amended Complaint detail various aspects of Broussard's conditions of confinement.  [*See* Am. Compl. 44–51.]  To be sure, Broussard puts this material within a proposed cause of action for negligent infliction of emotional distress.  [*See id.* at 44.]  But given this Court's obligation to construe *pro se* complaints liberally, the Court will assume that Broussard may also seek to bring claims that these conditions of his confinement violate his federal constitutional rights.

Fundamentally, however, including these claims in an action primarily challenging Broussard's prosecution and trial raises a problem of joinder. The Court repeats the point made by Magistrate Judge Wright: "'Despite the broad language of Rule 18(a) [of the Federal Rules of Civil Procedure], [a] plaintiff may join multiple defendants in a single action only if [the] plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.'" [Doc. No. 8 at 3 n.2 (quoting 7 Mary Kay Kane, *Federal Practice & Procedure* § 1655 (3d ed. Westlaw, updated April 2021) (brackets in order)).] As a federal court of appeals has explained, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . . ." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).[6] This joinder problem is particularly important in prisoner litigation because prisoner suits face the limitations imposed by the Prison Litigation

---

[6] While the U.S. Court of Appeals for the Eighth Circuit has not specifically cited *George*, numerous district courts throughout the Eighth Circuit have. *See, e.g.*, *Wheeler v. North Dakota*, No. 1:07-CV-075, 2008 WL 11486698, at *2 (D.N.D. Jan. 28, 2008), *aff'd*, *Wheeler v. Schuetzle*, 369 F. App'x 764 (8th Cir. 2010). Furthermore, several courts in this District have also cited or quoted *George* with approval. *See, e.g.*, *Amen El v. Schnell*, No. 20-CV-1327 (DSD/ECW), 2021 WL 509280, at *2 (D. Minn. Feb. 11, 2021) (quoting *George*), *report and recommendation adopted*, 2021 WL 880679 (D. Minn. Mar. 9, 2021); *Blevins v. Pearson*, No. 18-CV-2270 (DSD/DTS), 2018 WL 6814183, at *2 (D. Minn. Nov. 30, 2018), *report and recommendation adopted*, 2018 WL 6807391 (D. Minn. Dec. 27, 2018); *Fields v. Henry*, No. 17-CV-2662 (WMW/KMM), 2017 WL 9275052, at *2 (D. Minn. Nov. 3, 2017) (same), *report and recommendation adopted in relevant part*, 2018 WL 564731 (D. Minn. Jan. 26, 2018); *Shelton v. McLeod Cty.*, No. 16-CV-0466 (JRT/SER), 2016 WL 11486911, at *2 (D. Minn. Apr. 19, 2016) (same).

Reform Act (e.g., requiring initial partial filing fees for each suit, and limiting use of IFP status after a prisoner filed a certain number of suits deemed frivolous). *See id.* at 607.

Given these considerations—and the relative priority of Broussard's claims directly relating to his prosecution and trial—the Court dismisses without prejudice any conditions-of-confinement claims that Broussard may seek to press in the Amended Complaint. He can of course raise any such claims in later litigation (though whatever conditions-of-confinement litigation he pursues in the future will itself be subject to the same general joinder limitations the Court notes above).[7]

### D.   Prosecutorial Immunity

After the preceding discussion, what remains as the Amended Complaint's core is essentially a challenge to Broussard's prosecution. [*See, e.g.*, Am. Compl. 30–44.] The Court can dismiss at least one portion of this material immediately because of the absolute immunity accorded to prosecutors.[8] Doing so here is particularly key because Broussard

---

[7] By way of preview, the Court will stay certain portions of this litigation pending the completion of Broussard's criminal trial (including any appeals). If and when the stay is lifted, the Court's conclusions here concerning misjoinder are without prejudice to later arguments that Broussard's remaining Amended Complaint claims themselves still exhibit misjoinder.

[8] Numerous courts—including at least one in this District—have held that courts may raise the issue of prosecutorial immunity *sua sponte*. *See, e.g.*, *Radabaugh v. Corp. Tr. Co.*, No. 17-CV-1559 (JRT/BRT), 2017 WL 4023102, at *3 (D. Minn. Sept. 13, 2017) (adopting report and recommendation addressing prosecutorial immunity *sua sponte*); *see also, e.g.*, *Dant v. D.C.*, 829 F.2d 69, 76 (D.C. Cir. 1987) (affirming district court's *sua sponte* dismissal of claim based on prosecutorial immunity); *Smith v. Shelby Cty.*, 3 F. App'x 436, 438 (6th Cir. 2001) (same); *Neighbors v. Kansas*, No. 16-CV-04023 (DDC/KGS), 2017 WL 402167, at *6 (D. Kan. Jan. 30, 2017) (dismissing claims *sua sponte* based on

suggests that the pending civil claims against his current prosecutors create a conflict of interest demanding a stay of his pending trial.

Putting aside whether there is any merit to such a theory—the Court has its doubts—Broussard's claims against his various federal prosecutors fall squarely within the ambit of prosecutorial immunity.  For the prosecutors implicated here, Broussard purports to bring this action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[9]  *Bivens* actions and suits under 42 U.S.C. § 1983 are distinct, but in many ways, courts treat such claims similarly.  *See, e.g.*, *Farah v. Weyker*, 926 F.3d 492, 497 (8th Cir. 2019) (noting that, compared to § 1983 actions, *Bivens* action against federal officials "operates similarly against federal officials"); *Mendoza v. U.S. Immigr. & Customs Enf't*, 849 F.3d 408, 416 (8th Cir. 2017) ("An action under *Bivens* is almost identical to an action under [§ 1983], except that the former is maintained against federal officials while the latter is against state officials." (quoting *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990)).

One implication of this is that prosecutorial immunity, which bears on § 1983 claims, also applies to Broussard's potential *Bivens* claims against his federal prosecutors.

---

prosecutorial immunity); *Allah v. City of New York*, No. 15-CV-6852 (CBA/LB), 2016 WL 676394, at *4 (E.D.N.Y. Feb. 17, 2016) (same).

[9] [*See* Am. Compl. 4.]  Broussard also invokes § 1983, but to bring claims against federal actors, such as federal prosecutors, a *Bivens* action is the correct procedural mechanism. *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (discussing history of *Bivens* action); *Gonzalez v. Bendt*, 971 F.3d 742, 743 (8th Cir. 2020) (noting that § 1983 "applies only to constitutional violations by state officials").

Under prosecutorial immunity, a prosecutor is absolutely immune in a civil suit for damages under § 1983 for any prosecutorial conduct—in particular, "conduct related to initiating a prosecution and presenting the State's case." *See, e.g.*, *Stockley v. Joyce*, 963 F.3d 809, 817 (8th Cir. 2020) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (cleaned up)); *see also, e.g.*, *Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018) (making same point (citing cases)).

To be clear, this absolute immunity does not apply to a prosecutor's "'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Stockley*, 963 F.3d at 817 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (cleaned up)); *see, also, e.g.*, *Woodworth*, 891 F.3d at 1089 (same). But the Amended Complaint's discussion of Broussard's claims show that his assertions about his federal prosecutors fundamentally involve charging decisions as well as conduct related to developing and issuing indictments.[10] This is paradigmatic prosecutorial conduct.[11] As a result, the Court dismisses all of the Amended Complaint claims against federal prosecutors based on the prosecutorial-immunity doctrine.

---

[10] Indeed, almost every cause of action Broussard lists specifically invokes concerns with various indictments filed against him. [*See, e.g.*, Am. Compl. 30–44.]

[11] Broussard claims, of course, that prosecutors have acted in bad faith and/or improperly with respect to these indictments. The law is clear, however, that as long as the relevant conduct was prosecutorial in nature, prosecutorial immunity covers even bad-faith or improper conduct. *See, e.g.*, *Stockley*, 963 F.3d at 818 ("[A]llegations of unethical conduct and improper motive in the performance of prosecutorial functions do not defeat the protection of absolute immunity." (quoting *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016)).

### E.     Abstention

The next question is what effect Broussard's pending federal prosecution has on this action.  In *Younger v. Harris*, the U.S. Supreme Court determined that federal courts should not interfere with pending state-court prosecutions unless there are "extraordinary circumstances."  401 U.S. 37, 53 (1971).  A key consideration was the "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Id.* at 43–44.

While Younger concerned a *state*-court prosecution, the "basic doctrine" it relies on plainly has broader scope.  Unsurprisingly, then, numerous courts have indicated that federal courts should also refrain from interfering in ongoing *federal*-court prosecutions.  *See, e.g.*, *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016) ("Federal courts traditionally have refused, except in rare instances, to enjoin federal criminal prosecutions. (citing cases)); *Ceglia v. Zuckerberg*, 600 F. App'x 34, 37 (2d Cir. 2015) (citing cases); *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 187 (3d Cir. 2006); *Thomas v. Shroff*, No. 21-CV-0450 (LLS), 2021 WL 707007, at *3 (S.D.N.Y. Feb. 19, 2021); *United States v. Stone*, 394 F. Supp. 3d 1, 14 (D.D.C. 2019); *Manafort v. U. S. Dep't of Just.*, 311 F. Supp. 3d 22, 29–32 (D.D.C. 2018); *cf. Deaver v. Seymour*, 822 F.2d 66, 69 (D.C. Cir. 1987) ("[I]n no case that we have been able to discover has a federal court enjoined a federal prosecutor's investigation or presentment of an indictment.").  This straightforwardly indicates that Broussard cannot use this civil suit to enjoin his criminal prosecution.

*Younger*, as noted above, carved out an exception—federal-court interference in a prosecution may be warranted where "extraordinary circumstances" exist. Indeed, Broussard seems to argue that his case presents such circumstances. [*See* Am. Compl. 51–52.] The Court disagrees. Relevant extraordinary circumstances do not exist where a defendant has the ability to present a defense in his or her criminal prosecution. *See, e.g.*, *Ceglia*, 600 F. App'x at 37; *Shroff*, 2021 WL 707007, at *3. Here, Broussard plainly has that ability, so the extraordinary-circumstances exception does not apply.

However, the Eighth Circuit has held, to the extent that damages claims exist in a case where *Younger* abstention applies, the proper disposition is not dismissal, but a stay of the claims for damages. *See, e.g.*, *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 603 (8th Cir. 1999) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)); *see also, e.g.*, *Hager v. Washington Cty.*, No. 19-CV-2809 (JRT/DTS), 2020 WL 6106271, at *6 (D. Minn. May 4, 2020 (citing cases), *report and recommendation adopted*, 2020 WL 4671660 (D. Minn. Aug. 12, 2020), *aff'd*, No. 20-3074, 2020 WL 9211127 (8th Cir. Dec. 9, 2020). This action does not involve *Younger* abstention itself, of course, but given the close connection between *Younger* abstention and the abstention the Court applies here, the Court sees little reason why the rationales underlying the stay/dismissal distinction should not apply here. Here, Broussard's action includes demands for monetary damages alongside his claims for injunctive relief. The Court thus concludes that what remains of the Amended Complaint should be (1) dismissed to the extent it seeks injunctive relief, and (2) stayed to the extent it seeks damages.

To implement this stay, the Court orders Broussard to inform this Court (through a filing in this action) when his federal criminal proceedings—including all appeals—are complete. Broussard should notify the Court within 30 days of the date of resolution.

### F. Remaining Motions

Following the above analysis, what remains are the IFP Application and the TRO Motion. Given the financial representations within the IFP Application, the Court grants the IFP Application.

On the other hand, the Court denies the TRO Motion. This denial is almost certainly entailed by the discussion above about the impropriety of injunctive relief here. But even putting that discussion aside, the TRO Motion should be denied for at least two reasons. First, it is unclear whether Defendants have notice of the TRO Motion, given that they have yet to be served in this action. Under Federal Rule of Civil Procedure 65(b)(1)(B), a district court can issue a TRO without notice to an adverse party "only if . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Broussard has provided no such certification, nor has he explained why notice to Defendants ought not be required here.

Furthermore, when considering a request for a TRO, district courts in the Eighth Circuit consider the so-called "*Dataphase* factors": "(1) the threat of irreparable harm to the movant in the absence of relief; (2) the balance between the harm alleged and the harm that the relief may cause the non-moving party; (3) the movant's likelihood of success on the merits; and (4) the public interest." *S.B. v. Minn. St. High Sch. League*, No. 21-CV-2553 (ADM/JFD), 2021 WL 5545118, at *1 (D. Minn. Nov. 26, 2021) (citing *Dataphase*

13

*Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). Critically, the party seeking a TRO has the burden of showing such relief's propriety. *See id.* (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). The TRO Motion has no discussion whatsoever of the *Dataphase* factors, so Broussard has not met his burden of showing the need for a TRO.

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Going forward, Plaintiff Aaron Rhy Broussard's Amended Complaint [Doc. No. 4] is this action's operative complaint.

2.  To the extent that Broussard seeks to press any conditions-of-confinement claims in this action—including, but not limited to, any such claims based on the allegations at pages 44–51 of the Amended Complaint—those claims are **DISMISSED** without prejudice due to their misjoinder in this action.

3.  The Amended Complaint's claims against Defendants Thomas M. Hollenhorst, Melinda A. Williams, Charles J. Novats, Jr. [sic], W. Anders Folk, Erica McDonald, Michelle L. Olshefski, David J. Freed and Bruce Brandler are **DISMISSED** with prejudice because of prosecutorial immunity.

4.  To the extent that the remainder of this action seeks injunctive relief, it is **DISMISSED** without prejudice.

5.  To the extent that the remainder of this action seeks monetary relief, it is **STAYED** pending final resolution (including all appeals) of *United States v. Broussard*, No. 19-CR-0101 (SRN/ECW) (D. Minn.).

6.  Broussard shall inform this Court, through a filing in this action, of the final resolution (including all appeals) of No. 19-CR-0101 (SRN/ECW) (D. Minn.). He shall notify the Court within 30 days of the date of resolution.

7.  Broussard's Application to Proceed in District Court Without Prepaying Fees or Costs [Doc. No. 2] is **GRANTED**.

8.  Broussard's Motion for Temporary Restraining Order [Doc. No. 3] is **DENIED**.


Dated: March 11, 2022                                   s/Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge

15